# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

PHIL PERRY,

      *Petitioner*,

v.

UNITED STATES OF AMERICA,

      *Respondent*.

_____/

CRIMINAL CASE NO. 06-CR-20172
CIVIL CASE NO. 09-CV-14749

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE
(Doc. 297)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **DENIED.**

## II.    REPORT

### A.    Introduction

Pending, pursuant to an Order of Reference from United States District Judge Thomas Ludington (Doc. 302), is the above-entitled motion to vacate Petitioner Phil Perry's federal custodial sentence, which was filed under 28 U.S.C. § 2255. (Doc. 297.) Respondent submitted a response (Doc. 311) and Petitioner Perry (hereafter "Perry") did not file a reply. I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

### B.    Background

Perry was charged in four separate counts of a Fourth Superseding Indictment: Count 1, violation of 18 U.S.C. § 846 (conspiracy to possess cocaine and marijuana with intent to

distribute); Count 19, violation of 18 U.S.C. § 856 (a)(1) and 18 U.S.C. § 2 (maintaining residence for purpose of distributing and using controlled substances); Count 20, violation of 18 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine); and Count 36, violation of 18 U.S.C. § 843(b) (knowing use of a telephone to facilitate commission of felony under Controlled Substance Act). (Doc. 62.) On February 8, 2008, Perry pleaded guilty to Count I of the Fourth Superseding Indictment pursuant to a Rule 11 plea agreement filed that same day. (Doc. 171.)

On March 11, 2008, a stipulation for substitution of counsel was filed wherein the parties agreed that William Hackett would replace former defense counsel Robert Hackett. (Doc. 181.) On March 20, 2008, the court issued an order substituting William Hackett in place of Robert Hackett. (Doc. 184.) On December 15, 2008, Perry appeared for sentencing and on December 16, 2008, judgment was entered, sentencing Perry to the custody of the Bureau of Prisons ("BOP") for a term of 120 months. (Doc. 243.) A Notice of Appeal and Certificate of Service of the Notice of Appeal were both filed on December 23, 2008. (Docs. 244, 245.) On February 17, 2009, the Sixth Circuit dismissed Perry's appeal, stating that "Appellant [was] previously . . . notified that failure to satisfy certain specified obligations would result in dismissal of the case for want of prosecution" and noting that the fee was not paid, the "Form of Appearance" was not filed, and the "Transcript Purchase Order" were all not filed by January 20, 2009. (Doc. 263.) This Sixth Circuit order indicated it was sent to attorney William Hackett and was copied to Perry. (*Id.*) On December 7, 2009, Perry filed the instant motion to vacate sentence. (Doc. 297.) Pursuant to the Court's Order, the government filed its response on April 19, 2010. (Doc. 311.)

**C.    Governing Law**

In order to prevail on a section 2255 motion, a petitioner must show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A section 2255 motion is not a substitute for a direct appeal. When a petitioner raises a claim that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless a petitioner can show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation or actual innocence. *Reed v. Farley*, 512 U.S. 339, 354-55, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994); *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1981). A post-conviction motion under section 2255 is the proper vehicle for raising claims of ineffective assistance of counsel in the first instance. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990)). An ineffective assistance of counsel claim "may be brought in a collateral proceeding under § 2255 whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to,

not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would have been favorably different. *Id.* at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id.* at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

### D. Analysis and Conclusions

### 1. Appeal

Perry asserts that his counsel was ineffective because, although a notice of appeal was filed with the Sixth Circuit,

William Hackett did not pay filing fees or advise me that I was to pay fees directly. Court never advised me of fees, only that appeal must be filed within 10 days of sentencing . . . [and] the Judge asked attorney William Hackett if he would represent me in an appeal and he stated 'yes.' When leaving the courtroom my attorney stated he would not represent me and said to go to the clerk's office and file the forms myself.

(Doc. 297 at 3.) Attorney William Hackett stated in an affidavit filed with the government's motion that "Mr. Perry printed my name on the notice of appeal that was submitted to the United States Court of Appeals for the Sixth Circuit. Mr. Perry did this without my knowledge or my permission and later apologized to me for doing so." (Doc. 311, Ex. 3 at 2, ¶ 6.) William Hackett also notes that "there were no issues that Mr. Perry could appeal, particularly in light of the appeal waiver found in the plea agreement." (Doc. 311, Ex. 3 at 2, ¶ 5.)

The Supreme Court stated in *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000), that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 477. The Court "h[e]ld that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance claim entitling him to an appeal" without any further showing. *Id.* at 484.

The Sixth Circuit has summarized that "[s]tripping *Flores-Ortega* to its rudiments, it becomes clear that there are two scenarios in which the two *Strickland* components can be satisfied in a single stroke: (1) where the defendant specifically instructs his attorney to file an appeal, and his attorney does not; and (2) where non-frivolous grounds for appeal exist, yet no appeal is filed." *United States v. Lovell*, 83 Fed. App'x 754, 759 (6th Cir. 2003) (internal citation omitted). In the instant case, I suggest that neither situation applies. The Notice of Appeal was filed by Perry and William Hackett indicated in a sworn affidavit, which stands uncontested, that his name was placed

on the notice without his permission and for which Perry apologized. Since Perry had taken the responsibility of filing the notice of appeal upon himself, he thus had the further responsibility to pay the filing fee or to seek *in forma pauperis status* such that the fee could be waived. FED. R. APP. P. 24. Perry's failure to do so cannot now be placed upon former defense counsel. Even if the blame could somehow be shifted from Perry to his counsel, I suggest that the lack of meritorious appellate issues, as discussed below, would necessitate denial of Perry's section 2255 motion on that ground alone.

## 2. Voluntariness of Confession and Plea

Perry alleges that his "confession" was "coerced" because he "was told by my attorney Robert Hackett that the U.S. Attorney would charge my wife . . . and she would go to prison on those charges for 60 to 72 months." (Doc. 297 at 4.) Since Perry pleaded guilty, it appears that the "confession" he refers to is the factual basis he gave for the plea.

> Attorney Robert Hackett states that Perry's contention that he
>
> told Mr. Perry that his wife would be charged in the federal case if he didn't plead guilty is inaccurate. First, Mrs. Perry was charged in the original Indictment along with all the other co-defendants. I may have run her guidelines to give her an idea of her potential exposure given what I was told at the time, but I have no recollection of doing so.

(Doc. 311, Ex. 2 at 3, ¶ 9.) In addition, attorney Robert Hackett indicates that

> Mr. Perry pled guilty in large part because of an agreement that I brought to AUSA Parker to have the government dismiss his wife from the federal case and allow his wife to plead to some state drug offense, which would have significantly decreased the potential time his wife may have gone to prison in the event of a conviction in the federal system. Mrs. Perry was involved in these discussions I had with Mr. Perry regarding this issue and she was aware that Mr. Perry was pleading guilty in large part to help her.

(*Id.* ¶ 8.)

Perry further argues that his conviction was obtained by an involuntary plea where his "attorney Robert and William Hackett made me perjure myself by pleading guilty . . . when there was never any physical proof or evidence . . . other than hearsay in a phone wiretap conversation between my brother Kip and DEA-1." (Doc. 297 at 4.) The affidavit of attorney William Hackett indicates that

> Mr. Perry did not ask me to try to get his guilty plea set aside for any reason. In fact, when the government asked the court to declare the plea agreement breached, I discussed with Mr. Perry the fact that he had an opportunity to withdraw his guilty plea and terminate the plea agreement. Mr. Perry personally made the decision to stand-by his guilty plea and keep the benefits afforded him and his wife by the plea agreement. Mr. Perry never claimed to me that his guilty plea had been entered involuntarily or without an adequate understanding of any aspect of the entire plea process.

(Doc. 311, Ex, 3 at 1, ¶ 4.)

A plea of guilty is valid if it is entered knowingly, voluntarily and intelligently, as determined under the totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). The Constitution requires that such circumstances reflect that the defendant be informed of all the direct consequences of his plea. *Id.* at 755; *King v. Dutton,* 17 F.3d 151, 153 (6th Cir. 1994). In addition, Perry must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill, supra*, at 59.

I suggest that Perry cannot make the requisite showing. Perry's own allegation attributes involuntariness to a lack of physical evidence or the fact that his Rule 11 plea agreement was based, in part, on a desire to benefit to his wife of which he was aware. None of his allegations come close to asserting that his plea was given without knowledge or voluntariness. Even if they did, I suggest that the affidavit of attorney Robert Hackett confirms that Perry was fully informed,

chose to plead guilty of his own free will, and that he chose not to request the plea be set aside when given the opportunity. Accordingly, I suggest that Perry's section 2255 motion be denied on this ground as well.[1]

### 3. Search and Seizure

Perry also argues that his

> conviction [was] obtained by use of evidence gained pursuant to an unconstitutional search and seizure. FBI Agent Gustavo Grodinsky and [a] female posed as potential buyers of my home located at 1412 N. 7 Mile Rd, Pinconning, MI 48650 that I had for sale . . . . There was no warrant issued at this time. FBI agent never identified himself as an FBI agent . . . .

(Doc. 297 at 4.) Perry indicates that although he "had proof of where funds came from," his "attorney told me no jury would believe the money in my home was not drug money," so the attorney "did not supply evidence to that effect on my behalf which he had in his possession and could have shown proof." (Doc. 297 at 5.)

Attorney Robert Hackett states in an affidavit attached to the government's response that he determined that a motion challenging the search was "without merit" and that he

> do[es] recall telling Mr. Perry that a jury would not believe that the $60,000+ in CASH found in his house after a valid search, in the same room that cocaine was found, were the proceeds of his selling a few wooden pallets per week to a local company for $1.00 a piece.

(Doc. 311, Ex. 2 at 3, ¶ 11.)

Even assuming Perry's summary of the facts leading up to the agents acquiring a search warrant are true, I suggest that the Fourth Amendment was not violated. In *United States v. Schlotzhauer*, 356 Fed. App'x 56 (9th Cir. 2009), government agents posed as real estate purchasers and toured property owned by defendants. While on defendant's property, the agents

---

[1] I note that a transcript of the plea proceeding was not ordered because it was not needed to decide the issues presented in the instant motion pursuant to 28 U.S.C. § 753(f).

observed items consistent with a marijuana-growing operation. Coupling their observations with reports from a confidential informant that defendants had been growing marijuana, the agents were able to obtain a search warrant for the property. The Ninth Circuit stated that the defendants' "decision to open the property to public view by listing it for sale with the realty company manifested little, if any, subjective expectation of privacy, and whatever expectation of privacy they may have held subjectively was not objectively reasonable." *Schlotzhauer*, 356 Fed. App'x at 58. Therefore, the Ninth Circuit held that "[b]ecause there was no Fourth Amendment search, the reasonableness of the agents' ruse in posing as prospective buyers is immaterial." *Id.* I suggest the same analysis would apply here and that defense counsel's decision not to pursue a Fourth Amendment challenge was reasonable. Accordingly, I suggest that Perry's section 2255 motion should also be denied on this ground.

**4.      Attorney's Personal Issues**

Finally, Perry contends that his attorney Robert Hackett was ineffective because his attorney "was being charged for taking money from his employer" and Perry "feel[s] this affected how I was counseled during my case. [Robert Hackett] has since been suspended for 2 years as of March 2008." (Doc. 297 at 5.) Robert Hackett's affidavit states that he disclosed his misdemeanor conviction to Perry and that his "personal problems in no way influenced my ability to effectively represent Mr. Perry . . . ." (Doc. 311, Ex. 2 at 3, ¶ 10.) I suggest that Perry's allegations do not indicate how Robert Hackett's personal issues affected Mr. Hackett's representation of Perry; therefore, I suggest that Perry's section 2255 motion should be denied on this ground as well.

**5.      Conclusion**

For all the reasons stated above, I suggest that Perry's motion be denied because he has failed to show ineffective assistance of counsel, i.e., Perry has not shown how counsel's conduct was unreasonable nor has Perry shown how he was prejudiced by any such conduct.

## III.  REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

s/ Charles E Binder

Dated: June 8, 2010

CHARLES E. BINDER
United States Magistrate Judge

## **CERTIFICATION**

       I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System and served on the following non-ECF participant via the United States Postal Service: Phil Perry #26371-039, FCI Morgantown, P.O. Box 1000, Morgantown, WV 26507-1000.

Date: June 8, 2010        By: <u>s/Patricia T. Morris</u>
                                Law Clerk to Magistrate Judge Binder